# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1838 | **DATE** | Sept. 11, 2002 |
| **CASE TITLE** | Thomas Consolidated Industries   v   Koster Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

**Memorandum opinion and order entered. Accordingly, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.**

(11) ● [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 1 3 2002 | |
| | Notified counsel by telephone. | | date docketed | 40 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 13 2002

THOMAS CONSOLIDATED INDUSTRIES, )
INC., an Illinois corporation, and ROBERT C. )
THOMAS, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　　)　　No.　　00 C 1838
　　v. )
　　　　　　　　　　　　　　　　　　　　　)　　Judge Robert W. Gettleman
KOSTER GROUP, INC., )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas Consolidated Industries, Inc. ("TCI") and Robert C. Thomas have brought a three count amended complaint against defendant Koster Group, Inc., alleging breach of contract, negligence and fraud. The parties have filed cross-motions for summary judgment on liability. For the reasons set forth below, plaintiffs' motion is denied and defendant's motion is granted.

### Facts

The facts of this case are largely undisputed. Sometime in 1997 plaintiff Robert Thomas, a practicing attorney, formed TCI for the purpose of acquiring the machinery and equipment of two separate companies, Standard Die Mold ("Standard") and Phoenix Die & Mold ("Phoenix"). To that end, he met with George Garrod of Foothill Capital Corp. ("Foothill"), seeking financing for the purchase. At the time he met with Foothill, Thomas had appraisals of the machinery and equipment of both Standard and Phoenix. The total appraised, value based on fair market value, was $1,340,800. On January 23, 1997, Foothill sent Thomas a letter of intent, proposing a financing arrangement for TCI. Pursuant to the letter, TCI would borrow $780,000, which represented

40

approximately 75% of the liquidation auction value of TCI's machinery and equipment (the machinery and equipment of Standard and Phoenix). TCI agreed to pay a partially nonrefundable deposit in the amount of $12,000, Thomas agreed to contribute or pledge $100,000 toward the acquisition of Standard and Phoenix, and Thomas agreed to provide a personal guarantee. Foothill was to receive a security interest in TCI's assets. Thomas signed the letter of intent on behalf of TCI the following day. The parties then executed the necessary loan documents, and TCI purchased Standard and Phoenix.

As part of its loan commitment, Foothill required an auction value appraisal of the equipment. Foothill instructed Thomas to make arrangements for the appraisal with defendant. Defendant appraised the equipment in March 1997, and the appraisals were submitted to Thomas on March 27, 1997. Thomas authorized, was invoiced for, and paid for the appraisals. The aggregate appraised auction value of the Standard and Phoenix equipment as prepared by defendant was $1,044,175.

Plaintiffs acquired Standard and Phoenix in December 1997. TCI proved unsuccessful, however, and filed for bankruptcy in April 1999. The Standard and Phoenix equipment was auctioned off in July 1999. The auction was not well advertised and was conducted by and out of state firm. Defendant was not notified of the auction. The auction was not well attended and realized approximately $250,000, leaving Thomas potentially liable on his personal guarantee to Foothill.

### Discussion

Defendant has moved for summary judgment on all counts, arguing that plaintiffs have presented no facts in support of their claims that defendant committed negligence, fraud, or breached

2

the contract. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the non-moving party and make all reasonable inferences in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in the pleadings, but must "set forth specific facts showing a genuine issue for trial exists," Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000), and "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." Serfecz v. Jewel Food Stores, 67 F.3d 591, 596 (7th Cir. 1995). The non-movant "must supply evidence sufficient to allow a jury to render a verdict in his favor." Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).

In Counts II and III, plaintiffs claim that defendant is guilty of negligent and fraudulent misrepresentation. The Illinois Supreme Court has stated that the elements of a cause of action for negligent misrepresentation are essentially the same of those for fraudulent misrepresentation except that the defendant need not know or believe the statement to be false. Plaintiff need only allege that the defendant was careless or negligent in ascertaining the truth of the statement made. Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 94 (1st Dist. 2002) (citing Board of Education v. AC&S, Inc., 131 Ill.2d 428, 452 (1989). The elements of fraudulent misrepresentation are: 1) a false statement of material fact; 2) knowledge of belief of the falsity by the party making it; 3) the intention to

3

induce the other party to act; 4) action by the other party and reliance on the truth of the statement; and 5) damage resulting from the reliance. Id.[1]

In the instant case, plaintiffs' only evidence that defendant made a false statement is the fact that the actual auction recovered only $250,000, or approximately 25% of the auction value as appraised by defendant. With respect to their negligence claim, plaintiffs have provided no expert testimony to establish that defendant breached any standard of care applicable to the appraisal industry, or even any evidence to suggest that the appraised value was inaccurate when presented, two years prior to the auction. When asked about his fraud claims, plaintiff Thomas testified at his deposition that the only evidence of fraud was defendant's relationship to Foothill. That relationship consists entirely of defendant being on a list of many appraisers approved by Foothill. As defendant points out, plaintiffs' whole theory of a fraudulent conspiracy between defendant and Foothill is nonsensical. Foothill has no incentive to receive an artificially inflated appraisal, and then issue an under-collateralized loan.

In short, the only evidence that plaintiffs have to even suggest that the appraisal was "false," is the fact that two years later the auction recouped only 25% of the appraised value. Defendant has provided a number of responses to this argument and a number of potential legitimate reasons for this result. First, like most appraisals, the appraisals in the instant case included limiting language:

> The limiting conditions that are attached hereto are part and parcel of this appraisal evaluation and should be considered by the reader to be a vital part of the information provided. ...

---

[1] Because defendant is in the business of supplying information for the guidance of others in business transactions, the Moorman economic loss doctrine does not bar plaintiffs' claim for negligent misrepresentation. Prime Leasing, 773 N.E.2d at 94 (citing Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69 (1982).

4

> The fee for the appraisal report is not contingent upon the values reported. There have not been any guaranties associated with this fee and no liability can be intimated or assumed in any manner . . .
>
> The appraiser assumes no responsibility for the changes in the market conditions or for the inability of the owner to locate a purchaser at the appraised value ...
>
> The appraiser is not responsible for changes that may develop in the market place or possible changes in the state-of-the art of certain machinery and equipment which could substantially change the assigned values. ... the Koster group is not responsible for market changes in the values of the appraised equipment which may be effected by, but not limited to:
>
> - technological obsolescence
> - economic changes
> - comparable equipment sales which may saturate market values
> - OSHA regulations effecting market values
> - environmental rules effecting business ...

Defendant has submitted a report and testimony of its expert witness, Jack Boecher, who is President of Raco Corp., a company that has been in the business of buying used equipment since 1952. Boecher attended the July 19, 1999, auction and Raco was the largest single purchaser of equipment. Boecher has attended over 200 equipment auctions in the past 25 years. In his report, Boecher opines on the changes in the conditions of the used equipment market between the time of the appraisal in 1997 and the time of the sale in 1999. According to Boecher, the market deteriorated rapidly in this period for a number of reasons. First, an economic crisis spread throughout Asia, where many of the most popular machine tools are produced. With the Asian home markets drying up, many builders had excess production capacity to satisfy a market that had been booming in 1997. Because of the decline in the Asian market, there was a glut of machinery entering the United States. Then the United States market slowed in 1998, compounding the problem and resulting in heavy price reductions and discounting in the new tool industry.

In addition to his opinions on the market, Boecher also expressed an opinion on the auction. According to Boecher, the auction was poorly advertised and poorly attended, possibly because the auctioneer was not a local company. Additionally, Boecher states that the auction may have been poorly attended becuase it was held in July. In Boecher's experience, the middle of the summer is a poor time for an auction because many company decision makers are on vacation and not available to make the quick decisions necessary at auctions.

To counter this argument, plaintiffs, submit a statement from Donald A. Capoccia, the contract moldmaker for Phoenix from 1993 through the 1999 auction, who claims to be familiar with both the Phoenix and Standard equipment. Capoccia states that he was not consulted about the appraisals and would not have signed off on them. He then took defendant's appraisals and wrote his opinion of the value of each machine next to the value set by defendant.

Even if Mr. Capoccia is qualified to render an opinion on the value of the equipment, which he does not appear to be (his resume indicates no experience as an appraiser), his "report" neither rebuts defendant's evidence nor creates an issue of fact as to the "falsity" of defendant's appraisal. Mr. Capoccia's statement gives no analysis as to how he reached his values, nor has he presented any evidence, opinion or otherwise, that defendant's appraisal was improperly prepared.

In addition to Boecher, defendant has submitted the testimony of George Garrod, formerly of Foothill, who testified that the low auction value was not an isolated incident, but that Foothill had experienced a number of auctions that year that did poorly. Foothill attributed the low values to the Asian financial crisis and the so called "Y2K" scare, creating a fear that some machines had computerized components that would not work after January 1, 2000. Again, plaintiffs have offered no evidence to rebut Garrod's testimony.

Accordingly, because plaintiffs have presented no evidence to support their claim that defendant's appraisals were false statements, defendant's motion for summary judgment on Counts II and III is granted.

With respect to Count I, the parties exert much effort arguing about whether plaintiffs had a contract with defendant, or whether plaintiffs acted as Foothill's agent when arranging and paying for defendant's appraisal. It really makes no difference because, as set forth above, plaintiffs have no evidence to establish that defendant failed to perform in any way. Absent any evidence that defendant failed to perform within the standard of a professionally certified appraiser, or that defendant was in any way negligent, plaintiffs have no evidence that defendant breached the contract. Accordingly, defendant's motion for summary judgment on Count I is granted.

### Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

**ENTER:** **September 11, 2002**

Robert W. Gettleman
United States District Judge